No. 18,105.

CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION, ET AL.
*v.* ULYSSES S. SMITH, ET AL.
(316 P. [2d] 252)

Decided October 7, 1957.

RUTH S. HUNT, STUART B. ST. GERMAIN, HAROLD L. MEADOFF, for plaintiffs in error.

Messrs. BARRY, HUPP & DAWKINS, for defendants in error Ulysses S. Smith and Helen R. Smith.

Messrs. DONALDSON, HOFFMAN & GOLDSTEIN, for Anti-Defamation League of B'nai B'rith. Mr. ARNOLD FORSTER of New York, General Counsel, Mr. PAUL HARTMAN, Mr. SOL RABKIN, Associate Counsel. Messrs. MANDEL BERENBAUM, LOUIS G. ISAACSON, EDWARD MILLER, JOSEPH MOSKO, CHARLES ROSENBAUM, WALTER M. SIMON, EDWIN J .WITTELSHOFER, of Denver.

Mr. EDWIN J. LUKAS, of New York, General Counsel, American Jewish Committee, Mr. THEODORE LESKES, Associate Counsel.

Mr. ANTHONY F. ZARLENGO, Mr. WILLIAM E. DOYLE, *Amici Curiae.*

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

FOR convenience we shall refer to the parties to this writ of error as they appeared in the trial court, where defendants in error were plaintiffs and plaintiffs in error were defendants.

Two claims were stated in plaintiff's amended complaint, one for a decree quieting title to real property, a second to obtain a declaratory judgment. Plaintiffs alleged that they were the owners of and in possession of certain lots in Block 6, Ashley's Addition to Denver, and that on May 9th, 1942, certain owners of lots in said Block, including plaintiffs' predecessors in title, entered into an agreement among themselves that the lots owned by them should not be sold or leased to colored persons

and providing for forfeiture of any lots or parts of lots sold or leased in violation of the agreement to such of the then owners of other lots in said block who might place notice of their claims of record. Plaintiffs further alleged that they were colored persons of negro extraction and that any interest, or claim of any interest of defendants, under said agreement was without foundation of right and in violation of the Constitution of the United States and that said agreement was a cloud on plaintiffs' title which should be removed. Plaintiffs prayed for a complete adjudication of the rights of all parties to the action. Defendants placed of record in the office of the Clerk and Recorder of the City and County of Denver a Notice of Claim asserting that they were owners of lots in said Block 6 embraced in the agreement above mentioned and asserted title to the property which is the subject matter of the complaint by virtue of said agreement. By their answer and counterclaim defendants alleged that they were the owners and entitled to the possession of the real estate described in the complaint by virtue of the forfeiture provisions in the above mentioned agreement, and prayed for a complete adjudication of the rights of all parties and a decree quieting their title to the property in question.

All facts were stipulated and trial was to the court.

The trial court entered a decree and Declaratory Judgment pursuant to Rules 105 and 57, R.C.P. Colo. The court found that the plaintiffs were the owners in fee simple of the property described in the complaint and quieted their title thereto free and clear of any right of enforcement or attempted enforcement of the restrictive covenant or the Notice of Claim filed by defendants. The court further adjudged and decreed that the restrictive covenant "may not be enforced by this court as a matter of law, as to enforce same by this court would be a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution, and the enforceability of same is hereby removed as a

cloud upon the title of plaintiffs * * *." From the judgment and decree so entered the defendants bring the case here on writ of error.

The covenant or agreement under consideration was dated May 9, 1942, and the several signatories to the contract agreed for themselves, their heirs and assigns "not to sell or lease the said above described lots and parcels of land owned by them respectively * * * to any colored person or persons, and covenant and agree not to permit any colored person or persons to occupy said premises during the period from this date to January 1, 1990." It further provided that if any of said property. "shall be conveyed or leased in violation of this agreement" the right, title or interest of the owner so violating the agreement "shall be forfeited to and rest in such of the then owners of all of said lots and parcels of land not included in such conveyance or lease who may assert title thereto by filing for record notice of their claim * * *."

The agreement also provided for an action to recover damages against any person or persons who violated the restriction, "or such owners may jointly or severally enforce or have their rights hereunder enforced by an action for specific performance, abatement, ejectment, or by injunction or any other proper judicial proceedings, which right shall be in addition to any and all right to the interest so conveyed or leased in violation of this agreement."

It is contended by counsel for defendants that the Supreme Court of the United States in *Shelley v. Kraemer*, 334 U.S. 1, *McGhee v. Sipes*, 334 U.S. 1, and *Barrows v. Jackson*, 346 U.S. 249, did not have before it an agreement "for automatic forfeiture, nor did any of them create a future interest in the land." Counsel assert that they have no quarrel with these decisions stating that the Supreme Court "has been concerned solely with the question of judicial enforcement of restrictive covenants by injunction or by damages."

Covenants such as the one here considered whether denominated "executory interests" or "future interests," as urged by counsel for defendants, cannot change the character of what was here attempted.

Counsel for defendants contend that the agreement in question entered into by the predecessors in interest of plaintiffs and defendants did not create a "private anti-racial restrictive covenant." Instead they claim that it created a future interest in the land known as an executory interest. They assert, "Such interest vested automatically in the defendants upon the happening of the events specified in the original instrument of grant, and the validity of the vesting did not in any way depend upon judicial action by the courts. The trial court's failure and refusal to recognize the vested interest of the defendants, and its ruling that the defendants have no title or interest in or to the property, deprived the defendants of their property without just compensation and without due process of law." We cannot agree.

In the amended complaint numerous persons, firms and corporations were named as defendants, but in designating the record to be filed in this court only the amended complaint, the answer and counterclaim of the defendants Whitney J. Armelin, Carmelita Armelin and Capitol Federal Savings and Loan Association, together with plaintiff's reply thereto, the stipulation of facts together with the judgment and decree of the trial court, are specified. The record was amended on motion of Midland Federal Savings and Loan Association to include its answer in which the allegations of the amended complaint were admitted and said association prayed that plaintiffs be awarded the relief demanded in their amended complaint. We are not advised as to pleadings filed by the other defendants, including Robert E. Lee, Public Trustee and the City and County of Denver, who with the Midland Federal Savings and Loan Association are named as defendants in error in the instant case.

We are unable to rid ourselves of a strong impression that this writ of error is being prosecuted in the interest of title examiners, rather than in that of the property owners in Block 6 Ashley's addition to Denver. In the brief of counsel for plaintiffs in error we find this significant language: "Title examiners are in constant apprehension as to whether a title may be passed where these restrictive covenants prevail, and we feel that we should call upon this Honorable Body as to the doubts of this decision."

■ No matter by what ariose terms the covenant under consideration may be classified by astute counsel, it is still a racial restriction in violation of the Fourteenth Amendment to the Federal Constitution. That this is so has been definitely settled by the decisions of the Supreme Court of the United States. High sounding phrases or outmoded common law terms cannot alter the effect of the agreement embraced in the instant case. While the hands may seem to be the hands of Esau to a blind Isaac, the voice is definitely Jacob's. We cannot give our judicial approval or blessing to a contract such as is here involved.

In *Shelley v. Kraemer*, supra, the Supreme Court of the United States said:

"We hold that in granting judicial enforcement of the restrictive agreements in these cases, the States have denied petitioners the equal protection of the laws and that, therefore, the action of the state courts cannot stand. We have noted that freedom from discrimination by the States in the enjoyment of property rights was among the basic objectives sought to be effectuated by the framers of the Fourteenth Amendment. That such discrimination has occurred in these cases is clear. Because of the race or color of these petitioners they have been denied rights of ownership or occupancy enjoyed as a matter of course by other citizens of different race or color. The Fourteenth Amendment declares 'that all persons, whether colored, or white, shall stand equal

before the laws of the States, and, in regard to the colored race, for whose protection the amendment was primarily designed, that *"no discrimination shall be made against them by law because of their color."* (Emphasis supplied.)

 Because the language of the United States Supreme Court suggested that private racially restrictive covenants were not invalid per se, it was believed for some time that an action for damages might lie against one who violated such a covenant. A number of state courts adopted this position, and awarded damages against those who, contrary to their agreements, had made sales of property to negroes or other persons within the excluded classes. This problem came to the attention of the Supreme Court of the United States in *Barrows v. Jackson,* 346 U. S. 249, 253-4, 258, 259, 73 Sup. Ct. 1031, 97 L. Ed. 1586, where it was held that although such a grantor's constitutional rights were not violated, nevertheless the commodious protection of the Fourteenth Amendment extended to her and she could not be made to respond in damages for treating her restrictive covenant as a nullity.

Because the United States Supreme Court has extracted any teeth which such a covenant was supposed to have, no rights, duties or obligations can be based thereon.

The judgment is affirmed.

MR. JUSTICE FRANTZ not participating.