SEASHORE CLUB OF ATLANTIC CITY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. SEASHORE CLUB CONDOMINIUM ASSOCIATION, INC., A NONPROFIT CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided March 12, 1981.

*Jeffrey L. Gold* for plaintiff.

*Lloyd P. Eisen* for defendant (*Rothenberg, Hyett & Eisen,* attorneys).

GRUCCIO, A. J. S. C.

On cross-motions for summary judgment, I am presented with the threshold issue of whether the members of a condominium association have the right, power and authority to amend the condominium by-laws so as to delete plaintiff developer's right of first refusal to buy a condominium unit upon resale. Both the By-laws under contest herein and the Condominium Act of New Jersey (*N.J.S.A.* 46:8B–1 *et seq.*) specifically contemplate such a result.

Before articulating the findings of fact and legal reasoning which support this conclusion, it is necessary to consider the standards which govern summary judgment motions. In *Judson v. Peoples Bank and Trust Co. of Westfield,* 17 *N.J.* 67 (1954), the court (at 73) established the scope of the summary judgment procedure, holding in part that "the role of the judge in that procedure is to determine whether there is a genuine issue as to material fact, but not to decide the issue if he finds it to exist." See, also, *R.* 4:46–2. In noting that the moving party must clearly sustain its burden "to exclude any reasonable doubt as to the existence of any genuine issue of material fact" or show that "palpably" no such issue exists, the court further held that "[a]ll inferences of doubt are drawn against the movant in favor of the opponent of the motion" and that the issues of credibility are to be reserved for the trier of fact. *Id.* at 74–75. Applying this standard to the present case, I find the following material facts not to be in issue.

### Findings of Fact

Raymond Geftman is the developer and sponsor of the Seashore Club of Atlantic City (hereinafter, "developer"), a condominium regime located at 3300 Boardwalk, Atlantic City, New Jersey. Geftman brings this action as president of the Seashore Club.

The Seashore Club Condominium Association, Inc. (hereinafter, "association") is a nonprofit corporation which operates the condominium. By virtue of their ownership of individual units, every unit owner is automatically a member of the Seashore Club Condominium Association, defendant herein.

In accordance with the Condominium Act of New Jersey (*N.J. S.A.* 46:8B–1 *et seq.*), the developer filed the master deed and accompanying exhibits required to create a condominium regime with the county clerk. The by-laws were included among the exhibits duly filed with the master deed.

Paragraphs 15 and 17 of the master deed are relevant to this litigation and provide as follows:

15. SALE OR LEASE OR OTHER DISPOSITION OF UNITS:

Should the Unit owner (other than the Developer) wish to sell or lease his Unit, he shall, before accepting any offer to sell or lease his Unit, comply with the applicable provisions of the By-laws. Any attempt to sell or lease a Unit except as provided in the By-laws, shall be wholly null and void and shall offer no title or interest whatsoever upon the intended purchaser or lessee.

Paragraph 17 of the master deed provides in pertinent part:

17. METHOD OF AMENDMENT OF MASTER DEED:

This Master Deed may be amended at any regular or special meeting of the unit owners of this Condominium called or convened in accordance with the By-laws, by the affirmative vote of voting members casting not less than three-fourths (¾ ths) of the total vote of the members of the Association.

. . . . . . . .

. . . [N]otwithstanding the foregoing, this Master Deed may not be amended without the written approval of the Management Firm under the Management Agreement, as long as the said Management Agreement attached to this Master Deed remains in effect, which said approvals shall not be unreasonably withheld. No Amendment shall change the rights and privileges of the Developer without the Developer's written approval.

There are no other provisions in the master deed which deal with the sale, lease or other disposition of a unit. Nowhere in the master deed is any reference made to the developer's right of first refusal. In order to locate any provisions dealing with the sale or lease of a unit or the developer's right of first refusal, one must follow the mandate contained in the master deed and refer to the applicable provisions of the association's by-laws.

Article VII of the by-laws grants to the developer the right of first refusal. Article XI of the by-laws provides for amendments as follows:

Except as herein otherwise provided, these By-laws may be modified or amended only by the affirmative vote of ninety percent (90%) of all votes which may be cast by Unit Owners at a meeting of Unit Owners duly held for such purpose. To be effective, modifications and amendments must be recorded in the Office of the Register [*sic*] of Atlantic County. Insofar as rights are conferred upon the Developer by these By-laws, these By-laws may not be amended or modified (as to those portions only) written [*sic*] the consent, in writing, of the Developer, so long as the Developer shall be the owner of ten percent (10%) of the total units.

Since there are no other provisions in the master deed or by-laws relating to the developer's right of first refusal, or to the modification or amendment of the master deed or by-laws, a procedural history will prove instructive.

### *Procedural History*

The association and its board of trustees scheduled a special meeting of all unit owners to vote on whether the association's by-laws should be amended so as to eliminate the developer's right of first refusal. The developer commenced this action for temporary and permanent injunctive relief to prevent the association from (1) filing with the county clerk any amendment to its master deed or by-laws affecting the developer's rights without his consent, and (2) recording any amendments to the master deed and by-laws as a result of the above-mentioned special meeting convened by the association.

After discussion in chambers, I issued a temporary restraining order granting the relief requested by the developer, which was subsequently extended by consent. At such time, I specifically stated that I would not restrain the association from holding its special meeting to vote on the proposed amendment to the by-laws.

Several days thereafter the association conducted its special meeting. The official membership list consisted of 100 members, and 93 were present at the meeting in person or by proxy. A quorum being present, 90 votes were cast in favor of the

amendment to the by-laws deleting all references to the developer's right of first refusal, while three votes were cast against the amendment, representing a 96.7% majority of those present and eligible to vote. Since the developer did not own 10% of the units at the time of the vote, the association did not solicit the developer's written consent to such an amendment.

The result of the vote occasioned cross-motions for summary judgment. I deferred ruling on these matters pending the discovery of any relevant case law from other jurisdictions, since this matter appears to be one of first impression in New Jersey. Subsequent to the submission of briefs and oral argument on these cross-motions for summary judgment, *N.J.S.A.* 46:8B–31 and 36 were amended. Now these statutes establish a rebuttable presumption of unconscionability with respect to provisions of condominium master deeds or association by-laws affording the developer or the association a right of first refusal to buy a condominium unit upon resale. The aforesaid provision applies retroactively to all master deeds and by-laws in existence on the effective date of this statutory amendment, which is the situation in the instant case. After considering counsels' letter memoranda regarding the applicability of this statutory amendment to the instant case, I conclude that the statutory amendment does not change the threshold question originally briefed and argued by counsel. I now proceed to those arguments.

### *Argument*

Both counsel argue that specific statutory provisions of the Condominium Act of New Jersey (*N.J.S.A.* 46:8B–1 *et seq.*), as applied to respective portions of the within master deed and by-laws support the grant of summary judgment for their client. While I find that arguments presented on behalf of the association are dispositive of the threshold question, I also acknowledge that counsel for the developer has advanced a creative interpretation.

The developer contends that the Condominium Act specifically provides for amendments to master deeds. *N.J.S.A.* 46:8B–11 provides in pertinent part that "the master deed may be amended or supplemented in the manner set forth therein." Paragraph 17 of the master deed specifically provides that "[n]o Amendment [of the master deed] shall change the rights and privileges of the Developer without the Developer's written approval." Counsel for the developer argues that the developer's right of first refusal is contemplated within this provision, and that the association did not comply with the provision's mandate when it failed to obtain the developer's written consent. Consequently, counsel for the developer argues that the association cannot divest the developer of his right of first refusal without obtaining his written consent.

However, the association argues that it did not amend the master deed, but rather amended the developer's right of first refusal as contained in the by-laws. *N.J.S.A.* 46:8B–13(d) provides in part that the by-laws shall articulate the method by which the by-laws may be amended. Article VII of the by-laws herein grants to the developer the right of first refusal. Article XI of the same by-laws provides for modification or amendment only by the affirmative vote of 90% of all votes which may be cast by unit owners. Insofar as rights are conferred upon the developer by these by-laws, the association is required to obtain written consent of the developer if the developer should be the owner of 10% of the total units. The Association argues that it properly complied with both *N.J.S.A.* 46:8B–13(d) and Article XI of the by-laws when it amended Article VII of the by-laws so as to delete any reference to the developer's right of first refusal. At the time of the vote the developer did not own 10% of the total units. Consequently, the association argues that it was not required to obtain the developer's written approval.

Counsel for the developer argues in rebuttal that if the developer does not prevail on its argument regarding the association's improper amendment of the master deed, the developer

may prevail on an alternative theory. Article XII of the by-laws provides that

> In case any of these By-laws conflict with the provisions of the Master Deed or the Condominium Act of the State of New Jersey, the provisions of said Master Deed or the Condominium Act, as the case may be, shall control.

Since the association arguably complied with the provisions of the Condominium Act in amending the by-laws, counsel for the developer argues that conflicting provisions for affecting the developer's rights exist in the master deed and by-laws. Therefore, pursuant to Article XII of the by-laws, the provisions of the master deed regarding amendments supersede the same provisions contained in the by-laws. Under this saving provision, since the association did not comply with the provisions of the master deed relating to amendments, the developer should prevail.

### Conclusions of Law

As a general rule, it is the developer who initiates the construction and development of a condominium regime. The responsibilities which inhere in sponsoring such a real estate venture are matched by the developer's power to bind the association by contract, by the master deed and by the by-laws. The developer must assume the responsibility of complying with all the statutes and regulations governing the creation of a condominium regime and to attend to the original offerings for sale of the condominium units. Correspondingly, it follows that after the developer has filed the declaration of condominium and before any units in the condominium have been sold to the public, the developer retains complete control of the association, by virtue of the fact that he owns all the units in the condominium. At that time, therefore, the developer has the power to bind the association by contract, by master deed and by by-laws, and then to sell the condominium units subject to such documents. 15A *Am.Jur.2d*, *Condominiums*, § 26 at 854–55.

The Condominium Act of New Jersey specifically provides for the method of creation of a condominium regime in this State at

*N.J.S.A.* 46:8B–8. In pertinent part, the Legislature has provided that

A condominium may be created and established by recording in the office of the county recording officer of the county wherein the land is located a *master deed* executed and acknowledged by all owners, or the lessees setting forth the matters required by section 9 of this act. [Emphasis supplied.]

*N.J.S.A.* 46:8B–9 provides, among other things, that "The master deed shall set forth, or contain exhibits setting forth the following matters: . . . (i) By-laws. . . ." While the Condominium Act clearly provides that it shall be the developer's responsibility to file the master deed and accompanying by-laws, the burden transforms into a benefit. The developer retains complete control of the association, especially in his power to circumscribe the provisions of the master deed and by-laws so as to maximize his rights and privileges.

In short, the threshold question before me can be resolved by considering how carefully the developer drafted the pertinent provisions of the master deed and by-laws which relate to his right of first refusal. There are no provisions in the master deed which deal with the sale, lease or other disposition of a unit. Nowhere in the master deed is any reference made to the developer's right of first refusal. In Paragraph 15 of the master deed, dealing with the sale or lease or other disposition of a unit, a unit owner is twice directed therein to refer to the applicable provisions of the association's by-laws. In the complaint filed by the developer in the instant action it is Article VII of the by-laws which grants to the developer the right of first refusal. The developer's reliance on the provisions of paragraph 17 of the master deed is totally misplaced in this matter, since paragraph 17 of the master deed, entitled "METHOD OF AMENDMENT OF MASTER DEED," deals only with the amendment of the master deed, not the association by-laws. While the last sentence of paragraph 17 provides that "[n]o Amendment shall change the rights and privileges of the Developer without the Developer's written approval," that sentence clearly and unequivocally refers to amendments made to the master deed and not the association's by-laws.

Nor is the developer's rebuttal argument addressing Article XII of the by-laws any more persuasive. The developer argued that Article XII provides that in the case of a "conflict" between the by-laws and the master deed, the by-laws provide that the provisions of the master deed shall control. While this is a correct reading of Article XII, there is no "conflict" between the two documents. To the contrary, when read together, the master deed and by-laws create a logical and complete outline of the rights and obligations of the developer and association, and the procedural matters to be followed in exercising and fulfilling those rights and obligations. There simply exists no conflict or even any inconsistency in any provision in either document purporting to deal with matters in issue herein.

## CONCLUSION

The inartful drafter now assumes the posture of the artful dodger, and does so unconvincingly. As was said in a different context in *Capital Fed'l S. & L. Ass'n v. Smith*, 136 *Colo.* 265, 316 *P.*2d 252, 255 (Sup.Ct. 1957); "While the hands may seem to be the hands of Esau to a blind Isaac, the voice is definitely Jacob's." I cannot give my judicial blessing or approval to the developer's interpretation for reasons already expressed. The developer does well to heed to the voice of Justice Brook, who thundered from the bench long ago in *Throckmorton v. Tracy*, 75 *Eng.Rep.* 222, 251 (K.B. 1554):

> The party ought to direct his meaning according to the law, and not the law according to his meaning, for if a man should bend the law to the intent of the party rather than the intent of the party to the law, this would be the way to introduce barbarousness and ignorance and to destroy all learning and diligence.

Since the sole purpose of the special meeting of the association was to consider an amendment to the association's by-laws, the association acted in accordance with the express provisions of Article XI of the by-laws and *N.J.S.A.* 46:8B–13(d). I note in passing that if the association did not prevail in the instant action, the recent amendments to *N.J.S.A.* 46:8B–31 and 36, establishing a rebuttal presumption of unconscionability with

respect to the provisions of master deeds or association by-laws affording the developer and the association a right of first refusal, would present me with a second ground upon which to decide this matter, subject to arguments regarding the statutes' constitutionality.

Therefore, I immediately terminate the preliminary restraints heretofore granted dismiss the complaint with prejudice, declare that the Association had the right, authority and power to amend its by-laws to eliminate the developer's right of first refusal contained therein, and authorize and empower the association, its agents, employees and servants to record the amendment agreement substantially in the form attached to the answer.